**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**DISPLAY PACK CORPORATION,**

                              **Plaintiff,**                        **01-CV-0325A(Sr)**

**v.**

**GRIMM INDUSTRIES, INC.,**

                              **Defendant.**

---

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment.  Dkt. #37.

Currently before the Court is plaintiff Display Pack Corporation's ("Display Pack's"), motion to file a second amended complaint to add a cause of action pursuant to New York Labor Law § 191-c (Dkt. #55); defendant Grimm Industries, Inc.'s ("Grimm Industries'"), motion to amend its answer to assert the Statute of Frauds as an affirmative defense and for summary judgment on that defense (Dkt. #68); Display Pack's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure (Dkt. #74); and Display Pack's motion for summary judgment on its breach of contract, *quantum meruit*, and unjust enrichment causes of action.  Dkt. #85.

For the following reasons, Display Pack's motion to amend its complaint is denied; Grimm Industries' motion to amend its answer and for summary judgment is denied; Display Pack's motion for sanctions is denied; and Display Pack's motion for summary judgment on its breach of contract claim is granted.

## BACKGROUND

Grimm Industries is a manufacturer of plastic point-of-purchase retail displays and merchandisers.  Dkt. #45, p.2.  Since its inception in 1992, Display Pack has acted as Grimm Industries' sales representative.  Dkt. #45, p.2.  The parties agree that the terms of their business relationship were never formalized in writing.  Dkt. #69, ¶ 4; Dkt. #84, ¶ 4.

Plaintiff's amended complaint sets forth the following agreement between Display Pack and Grimm Industries:

> The plaintiff's services include contacting potential customers, introducing them to products manufactured by the defendant and soliciting the customers to purchase the defendant's products.  As part of this agreement, the defendant agreed to pay the plaintiff commissions based on the purchase of defendant's products.

Dkt. #56, p.6, ¶ 4.  Although Display Pack was free to represent or broker orders with other manufacturers with respect to non-plastic products, the President of Grimm Industries, Beatus Grimm, testified that it was agreed that Display Pack would represent Grimm Industries exclusively on the items Grimm Industries could produce.  Dkt. #45, p.3; Dkt. #69, p.16.  Display Pack agreed that "if the item is a product that can be

produced by Grimm Industries, then we want to represent Grimm Industries exclusively."  Dkt. #110, p.70.

The President of Display Pack, Thomas Dobmeier, avers that its commissions were based solely upon those purchase orders it obtained on behalf of Grimm Industries.  Dkt. #80, ¶ 8.  Grimm Industries states that "Display-Pack's compensation was a commission based on the amount of sales Grimm Industries derived from sales to customers that Display-Pack was servicing."  Dkt. #69, ¶ 6.  Mr. Grimm testified that he had removed Display Pack from an inactive account and had accepted from a broker an order destined for a customer Display Pack serviced.  Dkt. #98, pp.14-16.

Beginning in September, 2000, Mr. Grimm testified that he "slowed down and/or stopped payments of commissions" to Display Pack as a result of his concerns about Display Pack's loyalty to Grimm Industries.  Dkt. #80, p.14; *see* Dkt. #110, ¶ 9.  In March, 2001, Grimm Industries terminated its business relationship with Display Pack via letter accusing Display Pack of attempting to strengthen its brokerage business by selling products in competition with items produced by Grimm Industries.  Dkt. #45, p.4; Dkt. #80, p.12.  Grimm Industries also notified customers "of the change in sales representation."  Dkt. #98, p.21.  Grimm Industries states that "[a]fter discovering this conduct and terminating Display-Pack, Grimm Industries refused to pay any further commissions to Display-Pack."  Dkt. #69, ¶ 9.

Display Pack commenced suit against Grimm Industries seeking payment of outstanding commissions.  Dkt. #41, Exh. A.  Grimm Industries counterclaimed for breach of Display Pack's duty of loyalty, stating, *inter alia*, that Display Pack was "not entitled to recover commissions that it claims are due and owing" as a result of this breach.  Dkt. #41, Exh. B, ¶ 8.  In a prior Decision and Order addressing the parties' motions for declaratory judgment, this Court determined that in the event that plaintiff is found to have breached its duty of loyalty to defendant, the appropriate measure of damages would be limited to the commission(s) attributable to the disloyal transaction(s).  Dkt. #52.

The parties each maintained and regularly exchanged reports documenting the commissions earned by Display Pack.  Dkt. #80, p.3, ¶ 7.  Mr. Dobmeier avers that "[t]hese commission reports were regularly exchanged between Display Pack and Grimm [Industries] in the ordinary course of business so that each could verify the amount of the commissions due and owing to Display Pack so there would be no confusion between the parties . . . ."  Dkt. #80, p.3, ¶ 4.  The commission reports generated by Grimm Industries set forth, *inter alia*, the manufacturer's representative, customer, purchase order number, product description, invoice number, invoice date, quantity, unit price, total price, commission rate and commission total.  Dkt. #80, Exh. D.  Display Pack's commission reports set forth, *inter alia*, the vendor, purchase order date, purchase order number, purchase order value, commission rate, commission due, commission paid, last date paid, last check number, total commission paid and outstanding commission.  Dkt. #80, Exh. E.  Display Pack also presents these

commission reports broken down for each customer by year.  Dkt. #82, Exh. A, B & C.

A summary of Display Pack's commission reports demonstrates that Grimm Industries

owes Display Pack $345,651.03.  Dkt. #80, Exh. F.


## DISCUSSION AND ANALYSIS

**Leave to Amend the Complaint & Answer -  Fed.R.Civ.P 15(a)**

       Fed. R. Civ. P. 15(a) provides that a party may amend a pleading by leave

of court or by written consent of the adverse party.  Leave to amend is to be "freely

granted" unless the party seeking leave has acted in bad faith, there has been an

undue delay in seeking leave, there will be unfair prejudice to the opposing party if

leave is granted, or the proposed amendment would be futile.  *Foman v. Davis,* 371

U.S. 178, 182 (1962); *State Teachers Retirement Bd. v. Fluor Corp*., 654 F.2d 843, 856

(2d Cir. 1981); Fed. R. Civ. P.15(a).  The decision to grant or deny a motion for leave to

amend a pleading is within the discretion of the district court.  *Foman,* 371 U.S. at 182.


Labor Law § 191-c

       Plaintiff moves to amend the complaint to assert an additional theory of

recovery pursuant to New York Labor Law § 191-c, and to increase the *ad damnum*

clause to include double damages and attorneys' fees provided by that statute.

Dkt. #56, ¶ 1.  Defendant argues that the amendment is futile because, *inter alia*, Labor

Law § 191-c does not apply to agreements which are not in writing.  Dkt. #63, p.2.

Article 6 of the New York Labor Law affords a sales representative who has not received timely payment of earned commissions double damages, reasonable attorney's fees, court costs, and disbursements.  *See* New York Labor Law § 191-c.  However, this article also requires a written contract setting forth the method by which the commission is to be computed and paid.  *See* New York Labor Law § 191-b.  Since it is undisputed that no such writing exists in the instant case, there can be no cause of action pursuant to this statute.  *See Levine v. Zadro Products, Inc.*, 2003 WL 21344550 (S.D.N.Y. June 9, 2003) (New York Labor Law § 191-c claim based on oral agreement cannot be sustained); *McCoy Assocs., Inc. v. Nulux, Inc.*, 218 F. Supp.2d 286, 293 (E.D.N.Y. 2002) (dismissing Labor Law claims for failure to demonstrate that plaintiff was a sales representative where, *inter alia*, plaintiff did not have a written contract as required by Labor Law § 191-b); *Guterman v. RGA Accessories, Inc.*, 196 A.D.2d 785 (1st Dep't 1993) (affirming dismissal of Labor Law claim based upon oral contract to pay commissions on future sales).  Accordingly, plaintiff's motion to amend its complaint is denied as futile.


Statute of Frauds

Defendant moves to amend its answer to assert the Statute of Frauds as an affirmative defense on the ground that the agreement between Display Pack and Grimm Industries was for Display Pack "to procure, maintain, and service long-term relationships with potential customers of Grimm Industries."  Dkt. #68, ¶ 9.  Plaintiff argues that the Statute of Frauds is obviously inapplicable because the agreement was

terminable at will and the commissions sought were earned by the manufacturer's representative prior to termination.  Dkt. #83, p.2.

> New York law provides that an agreement will not be recognized or enforceable if it is not in writing and "subscribed by the party to be charged therewith" when the agreement "[b]y its terms is not to be performed within one year from the making thereof" (General Obligations Law § 5-701[a][1]). [The New York State Court of Appeals has] long interpreted this provision of the Statute of Frauds to encompass only those contracts which, by their terms "have absolutely no possibility in fact and law of full performance within one year" (*D & N Boening v Kirsch Beverages*, 63 NY2d 449, 454).  As long as the agreement may be "fairly and reasonably interpreted" such that it may be performed within a year, the Statute of Frauds will not act as a bar however unexpected, unlikely, or even improbable that such performance will occur during that time frame . . . .

*Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362, 366 (1998).  This strict construction is consistent with the rationale for the Statute of Frauds, which "was originally rooted in the prevention of fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury but not to afford persons a means of evading just obligations." *Id.* at 370 (internal quotations omitted); *see also Morris Cohon & Co. v. Russell*, 23 N.Y.2d 569, 574 (1969), *quoting* 4 WILLISTON, CONTRACTS [3d ed.] § 567A, pp.19-20 ("The Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made").  As a result, "a party's admission to the essential terms and actual existence of the oral contract is sufficient to take the agreement outside the scope of the Statute of Frauds." *Dzek v. Desco*

*Vitroglaze of Schenectady, Inc.*, 285 A.D.2d 926, 927 (3rd Dep't 2001); *see Concordia Gen. Contracting v. Peltz*, 11 A.D.3d 502, 503 (2d Dep't 2004).

In addition, "[a]n oral agreement that is terminable at will is capable of performance within one year and, therefore, does not come within the Statute of Frauds." *Murphy v. CNY Fire Emergency Servs., Inc.*, 225 A.D.2d 1034 (4th Dep't 1996), *citing North Shore Bottling Co. v. Schmidt & Sons*, 22 N.Y.2d 171, 176-77 (1968); *see also Cron,* 91 N.Y.2d at 367 (at-will employment relationships "are without the proscription of the Statute of Frauds concerning one-year performance"); *Apostolos v. R.D.T. Brokerage Corp.*, 159 A.D.2d 62, (1st Dep't 1990) ("Since, if a contract is terminable at will, it is capable of performance within a year, it is not within the statutory proscription, regardless of the length of time it actually remains in effect."). In New York, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party. *Rooney v. Tyson*, 91 N.Y.2d 685, 689 (1998).

In contrast, if the obligation to perform "would continue indefinitely without any means of termination by the employer," or "require the employer to continue performing under business relationships originally initiated by the plaintiff while in defendant's employ," the contract imposes an indefinite liability in violation of the Statute of Frauds. *Cron*, 91 N.Y.2d at 369. In *Zupan v. Blumberg*, for example, plaintiff, a freelance advertising solicitor, testified that he entered into an oral contract with defendants to receive 25% commission on any account that he obtained for

-8-

defendants for so long as the account was active.  2 N.Y.2d 547, 549 (1957).  Plaintiff

claimed that he brought a certain account into the business in 1950 but failed to receive

commissions on the account after May, 1951, even though the defendant continued to

handle the account.  *Id.*  The Court of Appeals determined that this was not a case

"where performance depended solely upon the will and desires of the two parties and

could rightfully be terminated at any time by either of them," *i.e.*, where "plaintiff might

or might not place orders with defendant and defendant might or might not accept

them."  *Id.* at 552, *analyzing Nat Nal Serv. Stations*, 304 N.Y. 332, 336 (1952)

(agreement "clearly one at will" where "neither party obligated itself to do anything" but

agreed that "[w]hen defendants accepted an order placed by plaintiff they became

bound to grant the discount.").  Instead,

> the contract was, on plaintiff's part, to procure accounts and
> on defendants' part, to pay plaintiff a percentage for so long
> as business from those accounts was forthcoming. It was
> within the contemplation of the parties to the contract that
> the customer might give orders for years, as actually
> occurred.

*Id.*  The Court determined that this latter agreement, which it characterized as a "service

contract of indefinite duration, in which one party agrees to procure customers or

accounts or orders on behalf of the second party, is not by its terms performable, within

a year and hence must be in writing . . . since performance is dependent, not upon the

will of the parties to the contract, but upon that of a third party."  *Id.* at 550.


Thus, case law clearly distinguishes between an unenforceable "oral

promise to pay renewal commissions following the termination of an at-will employment

relationship," and an enforceable "oral agreement entitling the plaintiff to commissions for accounts obtained or renewed during the period of his employment." *Caruso v. Malang*, 250 A.D.2d 800-01 (2d Dep't 1998); *see White v. Purchasing Support, Inc.,* 249 A.D.2d 991 (4th Dep't 1998) ("there is no merit to defendants' contention that the oral agreement entitling plaintiff to commissions earned during his employment is barred by the Statute of Frauds"); *Gold v. Benefit Plan Adm'rs, Inc.*, 233 A.D.2d 421 (2d Dep't 1996) (oral agreement "regarding the plaintiff's entitlement to commissions for sales she finalized prior to her termination was not barred by the Statute of Frauds and was seperable from the unenforceable agreement to pay her commission for renewals"); *Murphy,* 225 A.D.2d at 1036 *(*"Insofar as the agreement entitles plaintiff to commissions earned during his employment with defendant, it is not barred by General Obligations Law § 5-701(a)(1); it may be performed within one year and is not subject to the will of a third party but only to defendant's right to terminate plaintiff"); *Apostolos*, 159 A.D.2d at 62 (enforcing promise to share commissions on original insurance policies placed by plaintiff through defendant because defendant was free to decline the placement of new policies at any time and once the policy was placed, the transaction was completed, and commission immediately due, but finding promise to pay commissions on subsequent renewals barred by the Statute of Frauds because renewals were solely dependent upon the acts of third parties)*; Dickenson v. Dickenson Agency, Inc.*, 127 A.D.2d 983, 984 (4th Dep't 1987) ("that part of the oral agreement entitling plaintiff to commissions on policies sold or renewed during his employment was clearly valid and was divisible from that invalid part of the agreement providing for commissions earned on policies renewed subsequent to plaintiff's termination.").

In the instant case, Grimm Industries admits that it entered into an oral agreement with Display Pack whereby Display Pack became Grimm Industries' manufacturer's representative in return for commissions based on the amount of sales generated. Dkt. #69. Grimm Industries specifically documented those sales which were attributable to Display Pack's efforts and the commissions earned by Display Pack as a result of its efforts. Dkt. ## 80 & 82. It is clear from those reports that the commissions due Display Pack were earned during the course of Display Pack's employment as Grimm Industries' manufacturer's representative. Dkt. ##80 & 82. Moreover, there is no allegation but that the relationship was terminable at will, as evidenced by the fact that Grimm Industries accepted an order from a broker for a project destined for an account Display Pack serviced; removed Display Pack as the manufacturer's representative of an inactive account; and ultimately terminated the relationship by simply notifying customers that Display Pack was no longer authorized to represent Grimm Industries. Dkt. #80, p.12; Dkt. #98, pp.14-16. Accordingly, Grimm Industries' motion to amend its answer to assert the Statute of Frauds as an affirmative defense is denied as futile.


**Motion for Sanctions – Fed.R.Civ.P 11**

Display Pack moves for sanctions in the form of costs and expenses, including attorneys' fees, related to its defense of Grimm Industries' motion to amend its answer to assert the Statute of Frauds as an affirmative defense on the ground that Grimm Industries' legal argument is frivolous, unsupported by the facts, and asserted to harass Display Pack and delay these proceedings. Dkt. #74.

Rule 11(b) of the Federal Rules of Civil Procedure provides as follows:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances –

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

"Once a court determines that Rule 11(b) has been violated, it may in its discretion impose sanctions limited to what is sufficient to deter repetition of such conduct." *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000) (internal quotation omitted). The decision whether to impose a sanction for a Rule 11 violation is committed to the district court's discretion. *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004). Such sanctions "are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein

in zealous advocacy." *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005).

The Court does not find any evidence to suggest that Grimm Industries moved to amend its answer for any improper purpose, and notes that the motion was brought during the same period of time as Display Pack moved to amend its complaint, thereby negating any suggestion that the motion was an attempt to delay these proceedings.  With respect to the legal arguments and factual averments, the Court finds Grimm Industries' motion to amend its answer no more attenuated than Display Pack's motion to amend its complaint.  Accordingly, the Court declines to find a violation of Rule 11(b) which would warrant imposition of sanctions.

**Display Pack's Motion for Summary Judgment**

Display Pack moves for summary judgment on its breach of contract, *quantum meruit*, and unjust enrichment causes of action, seeking judgment in the amount of $345,651.03, as documented by Grimm Industries as commissions due and owing Display Pack at the termination of the parties' business relationship.  Dkt. #85, 103, p.5; Dkt. #112, ¶ 4.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the

court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Pursuant to Fed. R. Civ. P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial."  *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also H.Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit).

Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.  *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir. 1994).   Formation of a contract requires (1) at least two parties with legal capacity to contract; (2) mutual assent to the terms of the contract; and (3) consideration.  *See generally*, RESTATEMENT, SECOND, CONTRACTS §§ 9, 12, 17 (1981); *see also Matter of Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms").  "Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document."  *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).

In the instant case, Grimm Industries admits that it entered into an oral agreement with Display Pack whereby Display Pack became Grimm Industries' manufacturer's representative in return for commissions based on the amount of sales generated.  Dkt. #69, ¶ 6.  The amount of sales generated by Display Pack and the value of the commissions earned from those sales were clearly documented in reports exchanged between the parties.  Dkt. ##80 & 82.  Grimm Industries admits that it "slowed down and/or stopped payments of commissions" as a result of its concerns over Display Pack's alleged disloyalty and that it "refused to pay any further commissions to Display-Pack" following its termination of Display Pack.  Dkt. #69, ¶ 9; Dkt. #80, p.14.

In response to Display Pack's motion for summary judgment, Grimm Industries does not dispute the accuracy of the documents submitted by Display Pack in support of its motion for summary judgment, but simply requests an evidentiary hearing "to contest the amount now sought by plaintiff" because this amount is $4,621.10 less than the amount sought in Display Pack's amended complaint and $30,140.23 less than the amount sought by Display Pack upon termination by Grimm Industries.  Dkt. #100, ¶¶ 10-11.  This is wholly insufficient to raise a genuine issue of material fact as to the accuracy of the commission records submitted in support of Display Pack's motion for summary judgment.

Alternatively, Grimm Industries argues that it is entitled to a trial on the issue of Display Pack's alleged breach of its duty of loyalty to Grimm Industries.  Dkt.

#100, ¶ 3.  The Court agrees that given the factual dispute over Grimm Industries'

allegations that Display Pack breached its duty of loyalty to Grimm Industries, a trial will

be required to resolve this counterclaim.  *See* Dkt. #112, ¶ 2.  However, the question of

whether Display Pack breached a duty of loyalty to Grimm Industries by offering

products in competition with Grimm Industries' products does not alter Display Pack's

entitlement to commissions earned with respect to orders placed with Grimm Industries.

*See* Dkt. #52.  Accordingly, Display Pack's motion for summary judgment on its breach

of contract claim is granted in the amount of $345,651.03, plus interest and costs, as

established by Grimm Industries' documentation of commissions due Display Pack at

the termination of the parties' business relationship.


Inasmuch as the Court has determined that the parties were subject to a

valid, enforceable contract, recovery is not permitted on a *quantum meruit* or unjust

enrichment cause of action.  *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v.*

*Fine Host Corp.*, 418 F.3d 168, 175 (2nd Cir. 2005), *citing Clark-Fitzpatrick, Inc. v. Long*

*Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987).


## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that (1) Display Pack's

motion to file a second amended complaint (Dkt. #55), is **DENIED**; (2) Grimm

Industries' motion to file an amended answer to assert the Statute of Frauds as an

affirmative defense and for summary judgment on that defense (Dkt. #68), is **DENIED**;

Display Pack's motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil

Procedure (Dkt. #74), is **DENIED**; Display Pack's motion for summary judgment on its breach of contract cause of action (Dkt. #85), is **GRANTED**; and Display Pack's motion for summary judgment on its *quantum meruit* and unjust enrichment causes of action (Dkt. #85) are **DENIED**.

Inasmuch as Grimm Industries' counterclaim remains outstanding and may affect Grimm Industries' total liability to Display Pack, the Court declines to direct the entry of final judgment on Display Pack's claim at this time. *See* Fed. R. Civ. P. 54(b).

A status conference shall be held with the undersigned on **Friday, January 6, 2006 at 10:00 a.m.**

SO ORDERED.

S/ H. Kenneth Schroeder, Jr.
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

DATED:       Buffalo, New York
             December 12, 2005